[No. 6336–1.   Division One.   August 27, 1979.]

EMMETT J. JOHNSON, *Respondent,* v. TRADEWELL STORES, INC., *Appellant.*

*Ryan, Swanson, Hendel & Cleveland* and *David H. Oswald,* for appellant.

*Graham, Cohen, Wampold, Wesley & Munro* and *Norman W. Cohen,* for respondent.

DORE, J.—This appeal by Tradewell Stores, Inc. (hereinafter Tradewell) involves an industrial insurance claim brought by Emmett J. Johnson for an injury sustained while working at Tradewell.

## ISSUES

ISSUE 1. Did the trial court err in entering judgment of permanent partial disability at 19 percent of the maximum allowable for unspecified disabilities pursuant to the jury verdict where medical testimony set the maximum percentage at 19 percent (9 percent physical and 10 percent psychological) and the jury by special interrogatory set the psychological disability at 5 percent?

ISSUE 2. Did the trial court err in granting Johnson attorney's fees and medical witness fees pursuant to RCW 51.52.130?

FACTS

On May 14, 1973, Johnson sustained a back injury while working for Tradewell, a self–insurer employer. He appealed the denial of permanent partial disability to the Board of Industrial Insurance Appeals where he was granted 3 percent permanent partial disability of the maximum allowable for unspecified disabilities.

Three doctors testified at that hearing. Dr. J. Harold Brown testified that Johnson had a physical permanent partial disability of 9 percent; Dr. James A. McDermott, a psychiatrist, testified that Johnson had a permanent partial disability equal to 10 percent based on his psychiatric condition related to the industrial injury; and Dr. Arthur M. Compton testified that Johnson had no permanent partial disability related to the injury.

In the appeal to the Superior Court this testimony was read to the jury. The verdict form contained the following interrogatory which asked:

> What was the percentage increase of plaintiff's [Johnson's] permanent partial disability between July 30, 1973, and April 18, 1975, proximately caused by his May 14, 1973 injury?

The jury answered 19 percent. The verdict form also contained in interrogatory which asked:

> What portion of increase of plaintiff's permanent partial disability as set forth in interrogatory No. 2 [above] is psychiatric as opposed to physical?

The jury answered 5 percent.

The trial court entered judgment setting permanent partial disability at 19 percent less the 3 percent previously paid and granted Johnson attorney's fees in connection with the Superior Court proceeding and medical witness fees incurred at the appeal before the Board of Industrial Insurance Appeals. Tradewell appeals.

## DECISION

ISSUE 1: The trial court erred in entering judgment of permanent partial disability at 19 percent less the 3 percent previously paid and that judgment is hereby modified to 14 percent less the 3 percent previously paid.

■ In industrial insurance cases, the jury may arrive at a verdict that lies between the opinions of medical witnesses but that verdict may not exceed the maximum amount testified to by the experts. *Page v. Department of Labor & Indus.*, 52 Wn.2d 706, 328 P.2d 663 (1958). Where the jury awards more than the maximum percentage established by the medical testimony, the trial court is obligated to overturn the verdict. *Ellis v. Department of Labor & Indus.*, 88 Wn.2d 844, 567 P.2d 224 (1977).

■ The general verdict of 19 percent was possible only if the jury found a maximum physical disability of 9 percent and a maximum psychological disability of 10 percent. Here, the jury made a special finding that Johnson's permanent partial disability related to the psychological effects of his injury was 5 percent. A special finding inconsistent with the general verdict controls. *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 261 P.2d 73 (1953); *Pepperall v. City Park Transit Co.*, 15 Wash. 176, 45 P. 743 (1896). Judgment is therefore modified to 14 percent less the 3 percent previously paid in order that the verdict conform to the evidence.

ISSUE 2: The trial court did not err in granting Johnson attorney's fees and medical witness fees.

RCW 51.52.130 states in relevant part that:

If, on appeal to the court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained by the court, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court. . . . If the decision and order of the board is reversed or modified

*and if the accident fund is affected by the litigation* then the attorney's fee fixed by the court for services before the court only, and the fees of medical and other witnesses and the costs shall be payable out of the administrative fund of the department.

(Italics ours.) Tradewell argues that because it is a self–insurer employer, the accident fund is not affected by Johnson's successful appeal to the Superior Court and it was therefore error to grant attorney's fees and medical witness fees pursuant to RCW 51.52.130. We disagree.

■ It is well established that statutes must be interpreted in accordance with the intent of the legislature to avoid absurd results. *State v. Lake City Bowlers' Club, Inc.*, 26 Wn.2d 292, 173 P.2d 783 (1946). The legislative intent is controlling, though contrary to the strict letter of the statute. *Cory v. Nethery*, 19 Wn.2d 326, 142 P.2d 488 (1943).

■■ The legislative purpose of RCW 51.52.130 is to prevent the charging of unreasonable attorney's fees and to provide an injured worker, who has been denied justice by the Department of Labor and Industries, a means to adequately present a claim on appeal without incurring legal expenses which could substantially reduce an award if ultimately granted. *Harbor Plywood Corp. v. Department of Labor & Indus.*, 48 Wn.2d 553, 295 P.2d 310 (1956). Had Johnson's employer been required to insure through the State rather than being a self–insurer, the accident fund would have been affected by the litigation and Johnson would be entitled to both attorney's fees and medical witness fees. RCW 51.52.130. To deny injured workers these fees merely because they are employed by self–insurers would be manifestly unfair and contrary to the legislative purpose of RCW 51.52.130.

We hold that the phrase "and if the accident fund is affected by the litigation" should be read as defining the type of result which entitles the injured worker to fees on appeal to the superior court. That is, if the injured worker receives an increased award he is entitled to attorney's fees

and medical witness fees to be paid from the administrative fund pursuant to RCW 51.52.130 regardless of whether his employer is a self–insurer.[1]

Affirmed as modified.

SWANSON, A.C.J., concurs.

ANDERSEN, J. (concurring specially)—As to the allowance of attorney and medical witness fees to the injured workman, I concur based on the reasoning of the State Supreme Court in its recent decision in *Whitehead v. Department of Social & Health Servs.*, 92 Wn.2d 265, 269–70, 595 P.2d 926 (1979).

Reconsideration denied December 14, 1979.

Review granted by Supreme Court February 22, 1980.

---

[1]The legislative purpose here was to neither benefit nor penalize employers electing to be self–insurers and their employees. RCW 51.44.150 provides that self–insurers be assessed for the costs of administrating their portion of Title 51. As provided in WAC 296–15–060(1):

> Administrative cost assessment (1) Assessments levied by the department against each self–insurer shall be based on the self–insured employer's proportionate share of the administrative costs determined to be attributable to self–insurers, including . . . *appeals expenses,* and other general administrative expenses.

(Italics ours.) Thus to the extent that the administrative fund is required to pay attorney's fees in self–insurer cases, those expenses will be assessed against the self–insurers.