[No. 24119-6-II. Division Two. June 30, 2000.]

SALVADOR DELGADO GUIJOSA, ET AL., *Appellants*, v. WAL-MART STORES, INC., ET AL., *Respondents*.

*Timothy K. Ford* (of *MacDonald, Hoague & Bayless*); and *Robert D. Wilson-Hoss* (of *Hoss & Wilson-Hoss*), for appellants.

*D. Michael Reilly, Michael B. King,* and *Steven D. Jensen* (of *Lane Powell Spears Lubersky, L.L.P.*), for respondents.

BRIDGEWATER, J. — Plaintiffs appeal from a verdict in favor of Wal-Mart in a civil action alleging false imprisonment, battery, malicious prosecution, and violation of the Washington Consumer Protection Act. We affirm.

Salvador Delgado Guijosa (Delgado), Rogelio Hernandez Guijosa (Guijosa), and Ricardo Hernandez (Hernandez)

(collectively "plaintiffs")[1] filed this suit against Wal-Mart, claiming false imprisonment, battery, malicious prosecution, and a violation of the Washington Consumer Protection Act, based on discrimination.

The claim arises from an alleged shoplifting incident at the Wal-Mart in Shelton, Washington. Trial testimony conflicted about whether Delgado and Guijosa were wearing baseball caps when they entered the Wal-Mart. All parties agreed Hernandez wore a baseball cap when he entered the store. While shopping, Delgado and Guijosa tried on hats from a sale bin[2] and decided to purchase two. Rhonda Liburdi, a loss prevention associate, testified she saw Guijosa tear off the price tag and place the hat on his head. She also saw Delgado walk away from the bin wearing a cap. A sales associate testified that when the trio approached the bin, only Hernandez was wearing a cap, but when the three walked away from the bin, they each wore a hat. Delgado and Guijosa paid for some hats at the checkstand.[3] Liburdi asked the cashier if they paid for the hats on their heads; the cashier replied no. Liburdi stopped the trio in the front vestibule of Wal-Mart, telling them she was detaining them for taking the hats without paying.

Liburdi requested they proceed to a security office at the back of the store. She asked a co-worker, David Opfer, to assist her. Guijosa was the only one of the three who spoke English. He told Liburdi the hats belonged to them. Delgado and Guijosa both testified that Delgado's cap had been purchased two weeks before, and Guijosa's cap the previous day. Guijosa told Delgado and Hernandez to refuse to answer Liburdi's questions. Guijosa also told Liburdi that the three would make a statement to the police. Liburdi called the Shelton police, who arrived approximately 20-30 minutes later. The police filed charges against

---

[1] Hernandez is Guijosa's younger brother. Delgado is their uncle.

[2] The hats were on sale, two for $5.

[3] Guijosa later produced receipts from the day before and the day of the apprehension. The receipts show that hats were purchased, but do not show style or color.

Delgado and Guijosa based on Liburdi's statements. The City of Shelton cited Delgado and Guijosa for criminal theft in the third degree. These criminal charges were dismissed before trial by the City's motion. All parties agreed Hernandez wore a cap of a type not sold at Wal-Mart. Hernandez was not charged with any crimes. Wal-Mart did not return any of the hats, including the cap belonging to Hernandez.

At trial, plaintiffs made an offer of proof to introduce testimony about Liburdi's reputation for untruthfulness within the criminal justice system. They sought to introduce this evidence through the testimony of Delgado's and Guijosa's public defender, Donna Price. At voir dire outside the presence of the jury, Price indicated she would testify as to Liburdi's reputation for truth-telling in other criminal theft cases, based on her own observations of comparing her story to witnesses in other cases, and information regarding Liburdi told to her by the City Attorney, judge, and other defense attorneys. The trial judge ruled that the evidence was inadmissible under ER 608, because the criminal justice system could not be a sufficiently neutral community for purposes of reputation evidence.

Denying plaintiffs' motion for a directed verdict, the trial court gave an instruction based on the defense found in the shopkeeper's privilege statute, RCW 4.24.220. The jury found that Wal-Mart proved by a preponderance of the evidence that they detained the plaintiffs for a reasonable time on reasonable grounds, and thus it was allowed the defense to any civil claim found in the shopkeeper's privilege statute. Therefore, the jury found for Wal-Mart on the false imprisonment and battery claims. The jury also found for Wal-Mart on the malicious prosecution claim.

Last, the jury found that Wal-Mart did not discriminate against any of the plaintiffs, but found that Wal-Mart violated the Consumer Protection Act with respect to Delgado and Guijosa. Plaintiffs' counsel stated that he did not believe the verdicts were inconsistent. Wal-Mart's counsel argued that the verdict was inconsistent, and that the

correct remedy was judgment notwithstanding the verdict on plaintiffs' Consumer Protection Act claim. Neither party asked for jury clarification. After both parties briefed the issue, the trial judge agreed that without a finding of discrimination, there was insufficient evidence to find a violation of the Consumer Protection Act. The trial court granted Wal-Mart's motion for judgment as a matter of law, setting aside the jury's verdict on plaintiffs' Consumer Protection Act claim.

I. Law Enforcement as a Community for Purposes of ER 608

■ Plaintiffs sought to introduce the testimony of their public defender, Price, regarding Liburdi's "reputation" for untruthfulness within the criminal justice system. Specifically, Price's offered reputation testimony was primarily based on conversations with the City Prosecuting Attorney and her clients regarding inconsistencies between Liburdi's statements in her reports and an officer's or civilian witness's statements about other shoplifting incidents. The trial court excluded the testimony, finding that the criminal justice system cannot be a community for purposes of ER 608 because it is not sufficiently neutral. We review for abuse of discretion the trial court's decision regarding the sufficiency of foundation to support the admission of reputation testimony. *State v. Land*, 121 Wn.2d 494, 500, 851 P.2d 678 (1993). A trial court abuses its discretion when it acts in a manner that is manifestly unreasonable or based on untenable grounds. *Land*, 121 Wn.2d at 500.

■ ER 608(a)[4] allows the admission of evidence as to a witness' reputation for truthfulness. ER 608(a)'s application has been broken down into five elements:

"The first element is the foundation for the testimony—the

---

[4] **(a) Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of reputation, but subject to the limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise. ER 608.

knowledge of the reputation of the witness attacked. Second, the impeaching testimony must be limited to the witness's reputation for truth and veracity and may not relate to the witness's general, overall reputation. Third, the questions must be confined to the reputation of the witness in his community . . . Fourth, the reputation at issue must not be remote in time from the time of the trial. Finally, the belief of the witness must be based upon the reputation to which he has testified and not upon his individual opinion."

*State v. Lord*, 117 Wn.2d 829, 873, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992) (citations omitted).

 Under the third factor, a valid community must be " 'neutral enough [and] generalized enough to be classed as a community.' " *State v. Callahan*, 87 Wn. App. 925, 934, 943 P.2d 676 (1997) (citing *Lord*, 117 Wn.2d at 874). *Callahan* specifically held that "[f]or purposes of reputation testimony, the criminal justice system is neither neutral nor sufficiently generalized to be classified as a community." *Callahan*, 87 Wn. App. at 935 (citing *Lord*, 117 Wn.2d at 874). We decline plaintiffs' suggestion to overrule our previous holding in *Callahan*.

Plaintiffs first urge this court to overrule *Callahan* and apply the "work community" rule elucidated in *Land*, 121 Wn.2d at 500, to find that Liburdi worked within the "criminal justice community," thus rendering evidence of her reputation for truthfulness admissible under ER 608. Plaintiffs argue that the cases upon which *Callahan* relied to determine whether the criminal justice system was a "community," *State v. Swenson*, 62 Wn.2d 259, 382 P.2d 614 (1963) and *Lord*, 117 Wn.2d 829, were reversed on this point by the Supreme Court's decision in *Land*, 121 Wn.2d 494.

 But, in *Land*, the Supreme Court did not overrule the sufficiently "neutral" and "general" test from *Lord* and *Swenson*, which *Callahan* cited to hold that the criminal justice system did not qualify as a community for purposes of ER 608. *Land* overruled *Swenson* **only** to the extent it barred evidence of reputation within "a business or other

relevant community." *Land*, 121 Wn.2d at 500-01. Plaintiffs fail to cite the entire passage when stating the test it wishes us to adopt. *Land* stated the test as follows:

> To establish a valid community, the party seeking to admit the reputation evidence must show that the community is both neutral and general. *State v. Lord*, 117 Wn.2d 829, 874, 822 P.2d 177 (1991), *cert. denied*, [506 U.S. 856, 113 S. Ct. 164,] 121 L. Ed. 2d 112 (1992). Some relevant factors *might* include the frequency of contact between members of the community, the amount of time a person is known in the community, the role a person plays in the community, and the number of people in the community. The decision as to whether the foundation for a valid community has been established rests within the proper discretion of the trial court. *See Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 76-77, 684 P.2d 692 (1984).

*Land*, 121 Wn.2d at 500 (emphasis added). Therefore, the second sentence of the test lists *possible* factors to consider in determining whether the community is sufficiently neutral and general, not a per se rule itself. And, the decision remains within the proper discretion of the trial court. Here, the trial court did not act in a manner that was "manifestly unreasonable" or base its decision on untenable grounds or reasons in finding that the criminal justice community was not sufficiently neutral, nor that it was Liburdi's work community. We hold that the trial court did not abuse its discretion in not admitting the reputation testimony offered by Price because the criminal justice system is not a general or neutral community.

## II. SHOPKEEPER'S PRIVILEGE

Plaintiffs assign error to the trial court's denial of their motion for a directed verdict on the issue of whether the shopkeeper's privilege applied, and to the trial court's subsequent jury instruction explaining the shopkeeper's privilege defense found in RCW 4.24.220.

■ RCW 4.24.220 ("shopkeeper's privilege statute") creates a "reasonable grounds" defense for retailers in an

action for unlawful detention, arising from a shoplifting investigation for shoplifting taking place at their retail establishment. *See e.g. State v. Johnston*, 85 Wn. App. 549, 933 P.2d 448 (1997). The statute provides the defense:

> In any civil action brought by reason of any person having been detained on or in the immediate vicinity of the premises of a mercantile establishment for the purpose of investigation or questioning as to the ownership of any merchandise, it shall be a defense of such action that the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning by a peace officer *or* by the owner of the mercantile establishment, his authorized employee or agent, and that such peace officer, owner, employee or agent had reasonable grounds to believe that the person so detained was committing or attempting to commit larceny or shoplifting on such premises of such merchandise. As used in this section, "reasonable grounds" shall include, but not be limited to, knowledge that a person has concealed possession of unpurchased merchandise of a mercantile establishment, and a "reasonable time" shall mean the time necessary to permit the person detained to make a statement *or* to refuse to make a statement, and the time necessary to examine employees and records of the mercantile establishment relative to the ownership of the merchandise.

RCW 4.24.220 (emphasis added). Plaintiffs moved for a directed verdict on this defense at trial, maintaining the statute did not apply in this case as a matter of law because the detention went beyond a "reasonable time." Plaintiffs raise the same argument on appeal: that the statute permits detention for a reasonable time and manner to permit investigation by *either* a peace officer *or* the retailer's agent—not both. Specifically, plaintiffs argue that Liburdi's determination that they would not give her any information shortly after their apprehension required their immediate release in order for Wal-Mart to avoid civil liability. Consequently, plaintiffs argue that the defense was inapplicable as a matter of law because their detention went beyond the time when they refused to give statements to store security; Wal-Mart was not authorized to detain plaintiffs long

enough for them to refuse to make a statement to the police *also*. Plaintiffs rely upon the "plain language" of the shopkeeper's privilege statute to support their argument.

The trial court determined that in applying the shopkeeper's privilege statute, what was at issue was determination of reasonable time for the investigative process, and this question of "reasonable time" should be decided on a case by case basis. Thus, the trial court denied the motion for a directed verdict, and consequently instructed the jury on the shopkeeper's defense. If the claimed error in giving the instruction is a matter of law, this court reviews de novo the giving of a jury instruction. *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995). Furthermore, "[t]his court reviews a trial court's determination of the meaning of a statute de novo, with the primary purpose of giving effect to the intent of the Legislature." *State v. Sunich*, 76 Wn. App. 202, 205, 884 P.2d 1 (1994) (citing *State v. Kuhn*, 74 Wn. App. 787, 790, 875 P.2d 1225 (1994)), *review denied*, 127 Wn.2d 1017 (1995). To this end, we avoid a literal reading if it leads to absurd, unlikely, or strained consequences. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). Thus, we review the meaning of "reasonable time" within the shopkeeper's privilege statute de novo.

We resort to methods of statutory construction if a statute is ambiguous. *See Rettkowski v. Department of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996). An ambiguity exists if the language at issue is susceptible to more than one reasonable interpretation. *State v. Azpitarte*, 140 Wn.2d 138, 141, 995 P.2d 31 (2000) (citing *State ex rel. Royal v. Board of Yakima County Comm'rs*, 123 Wn.2d 451, 459, 869 P.2d 56 (1994)). Nonetheless, "where the statutory language is plain and unambiguous, its meaning must be derived from the wording of the statute itself." *Human Rights Comm'n v. Cheney Sch. Dist. No. 30*, 97 Wn.2d 118, 121, 641 P.2d 163 (1982).

Plaintiffs emphasize the use of the disjunctive "or" instead of the conjunctive "and" to argue that the plain

meaning of the statute allows detention for time long enough to either make or refuse to make a statement to store security *or* to make or refuse to make a statement to the police—not both. Generally, we presume "or" is used in a statute disjunctively unless there is clear legislative intent to the contrary. *State v. Weed*, 91 Wn. App. 810, 813, 959 P.2d 1182 (1998) (citing *State v. Bolar*, 129 Wn.2d 361, 365-66, 917 P.2d 125 (1996)), *review denied*, 137 Wn.2d 1010 (1999). *See also State v. Tiffany*, 44 Wash. 602, 604, 87 P. 932 (1906); *Childers v. Childers*, 89 Wn.2d 592, 595-96, 575 P.2d 201 (1978) (construing "or" in child support statute); *State v. Sigman*, 118 Wn.2d 442, 448, 826 P.2d 144, 24 A.L.R.5th 856 (1992) (construing "or" in criminal statute); *Town of Clyde Hill v. Rodriguez*, 65 Wn. App. 778, 782, 831 P.2d 149 (construing "or" in DUI statute), *review denied*, 119 Wn.2d 1022, 838 P.2d 692 (1992). Following this literal interpretation, a retailer would have the right to detain a suspected shoplifter *only* long enough for the shoplifter to refuse to give a statement to store security, obligating the retailer to release the suspect immediately after, or face civil liability.

But, the disjunctive "or" and conjunctive "and" may be interpreted as substitutes. *Mount Spokane Skiing Corp. v. Spokane County*, 86 Wn. App. 165, 174, 936 P.2d 1148 (citing *Tiffany*, 44 Wash. at 604), *review denied*, 133 Wn.2d 1021 (1997). Furthermore, Wal-Mart argues that the plaintiffs' proposed interpretation would lead to absurd results; we agree. Plaintiffs' proposed interpretation would "allow shoplifters who are caught red-handed to escape prosecution by simply refusing to offer so much as even their names to store employees." Report of Proceedings at 40. Additionally, plaintiffs' interpretation would result in *no* investigation or questioning "by a peace officer" *unless* they first apprehended the shoplifter instead of store security; police generally are not on the premises of the retail establishment and must be called in by store personnel. This court's purpose in construing a statute is to ascertain and give effect to the intent and purpose of the Legislature. *State v.*

*Williams*, 62 Wn. App. 336, 338, 813 P.2d 1293, *review denied*, 117 Wn.2d 1027 (1991). To this end, courts avoid a literal reading of a statute if it would result in unlikely, absurd, or strained consequences. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989) (citations omitted); *Elgin*, 118 Wn.2d at 555.

Furthermore, the affirmative right to detain shoplifters contained in RCW 4.24.220 derives from the common law right of citizen arrest. *State v. Miller*, 103 Wn.2d 792, 795, 698 P.2d 554 (1985) (citing *State v. Gonzales*, 24 Wn. App. 437, 604 P.2d 168 (1979), *review denied*, 93 Wn.2d 1028 (1980)). And, RCW 9A.16.080 provides a similar defense to criminal actions.

> In any *criminal* action brought by reason of any person having been detained on or in the immediate vicinity of the premises of a mercantile establishment for the purpose of investigation or questioning as to the ownership of any merchandise, it shall be a defense of such action that the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning *by a peace officer, by the owner of the mercantile establishment, or by the owner's authorized employee or agent*, and that such peace officer, owner, employee, or agent had reasonable grounds to believe that the person so detained was committing or attempting to commit theft or shoplifting on such premises of such merchandise. As used in this section, "reasonable grounds" shall include, but not be limited to, knowledge that a person has concealed possession of unpurchased merchandise of a mercantile establishment, and a "reasonable time" shall mean the time necessary to permit the person detained to make a statement or to refuse to make a statement, and the time necessary to examine employees and records of the mercantile establishment relative to the ownership of the merchandise.

RCW 9A.16.080 (emphasis added). Although generally at common law a private citizen may arrest an individual for a misdemeanor only when the crime constitutes a breach of the peace, *Gonzales* read both statutory shopkeeper's defenses together to hold that "[t]he owner of a mercantile establishment or his employee may make a warrantless

arrest of a thief whom he has observed shoplifting, *even though no breach of the peace has occurred.*" *Gonzales*, 24 Wn. App. at 439 (emphasis added). *See also Miller*, 103 Wn.2d at 795. Under the wording of RCW 9A.16.080, the time for detention is "time to permit such investigation or questioning by a peace officer, by the owner of the mercantile establishment, or by the owner's authorized employee or agent." Therefore, the crucial inquiry under RCW 9A.16.080 is whether store security possessed reasonable grounds for arrest, because "the authority to make the arrest . . . must necessarily carry with it the privilege of using all reasonable force to effect it." *Miller*, 103 Wn.2d at 795 (citation omitted).

RCW 9A.16.080 clearly provides that a storeowner may detain a suspected shoplifter and wait for the police to arrive, without facing criminal liability. We construe related statutes as a whole, trying to give effect to all the language and to harmonize all provisions. *Heidgerken v. Department of Natural Resources*, 99 Wn. App. 380, 993 P.2d 934 (2000) (citing *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996)). It does not make sense that our Legislature intended to provide a defense from criminal liability, if, once detained, store security chooses to wait for the police, but to not provide this same defense from civil liability in the same circumstances. Therefore, the statute allows detention for a reasonable time after the "apprehension" for the investigative process, including waiting for the arrival of the police. And, Liburdi possessed the right to make this warrantless arrest of plaintiffs, even absent a breach of the peace, so long as "reasonable grounds" existed.

The existence of "reasonable grounds" within the meaning of RCW 4.24.220 to detain a person for shoplifting can be analogized to whether probable cause existed for arrest. *Moore v. Pay'N Save Corp.*, 20 Wn. App. 482, 488, 581 P.2d 159 (1978). Therefore, whether "reasonable grounds" existed for detention in the shoplifting context is a question of fact. *Moore*, 20 Wn. App. at 488 (citations omitted). A trial

court should grant a motion for a directed verdict only if, as a matter of law, no evidence or reasonable inferences exist to sustain a verdict for the nonmoving party. *Moe v. Wise*, 97 Wn. App. 950, 956, 989 P.2d 1148 (1999) (citing *Bender v. City of Seattle*, 99 Wn.2d 582, 587, 664 P.2d 492 (1983)). Therefore, the trial court properly denied the motion for a directed verdict because there was a question of fact for determination by the jury—whether there existed "reasonable grounds" for detention of the three plaintiffs. We hold that the trial court correctly submitted the shopkeeper's privilege instruction to the jury.

On the other hand, plaintiffs' argument can be characterized not as an objection to an *assertion* of the privilege (i.e. whether reasonable grounds exist), but a challenge to the *scope* of the privilege (i.e. whether the detention went beyond a reasonable time). Plaintiffs touch upon this argument when stating that it was improper for the court to assume that "reasonable time" was a question of fact to be decided "case by case," along with a determination of "reasonable grounds." Plaintiffs correctly state that statutes enacted in derogation of the common law are to be strictly construed absent legislative intent to the contrary, citing *Lumberman's of Washington, Inc. v. Barnhardt*, 89 Wn. App. 283, 286, 949 P.2d 382 (1997). Therefore, plaintiffs argue that because the statute clearly defines "reasonable time," it is not an issue for the trier of fact to determine under the specific circumstances of the case. But, in order to read RCW 4.24.220 in harmony with RCW 9A.16.080, plaintiffs' interpretation cannot be correct. Where legislative intent is to the contrary, we do not strictly construe the statute. *Lumberman's*, 89 Wn. App. at 286.

Also, although *Moore*, 20 Wn. App. at 489, held that the whether "reasonable grounds" for the detention exists is a question of fact for the jury, no Washington cases have specifically held that whether the detention was for a "reasonable time" is also a question of fact. Generally, however, the reasonableness of a shopkeeper's detention as a whole depends upon the facts and circumstances of the

case. *See generally*, 32 Am. Jur. 2d *False Imprisonment* § 80 (1995). Other jurisdictions examining the time-specific issue under a shopkeeper's privilege statute have looked to all the circumstances of the detention to determine whether the time was "reasonable." *See e.g. Adams v. Zayre Corp.*, 148 Ill. App. 3d 704, 499 N.E.2d 678, 102 Ill. Dec. 121 (1986) (holding detention of customer not reasonable where shopper detained for 15 minutes after it was determined there were no grounds for holding shopper). Additionally, the Washington shopkeeper's statute defines "reasonable time" as not only time enough to attempt to obtain a statement, but also as "the time necessary to examine employees and records of the mercantile establishment relative to the ownership of the merchandise." RCW 4.24.220. This necessarily requires an examination of the entire circumstances of the detention. As a matter of law, we would not hold that the approximately 20-30 minutes in this case that plaintiffs waited for the police to arrive was an unreasonable amount of time for Liburdi to attempt to get their statements, and investigate ownership of the merchandise. Furthermore, it is persuasive that plaintiffs did not produce the receipts during this time, and also told Liburdi that they would voluntarily make a statement to police, which they later made.

Therefore, the question of whether a shopkeeper detained a shoplifter for a "reasonable time" may be dependent upon the circumstances of the specific case. Reading RCW 4.24.220 in harmony with RCW 9A.16.080, we hold that RCW 4.24.220 does not allow a detention of suspected shoplifters *only* for the amount time required for them to refuse to make a statement to store security. As a matter of public policy, storeowners should be able to hold suspected shoplifters for a reasonable amount of time to await the police's arrival and seek the police's determination of whether probable cause exists for an arrest.

██ In this case, there was substantial evidence that

Wal-Mart had reasonable grounds to detain the plaintiffs,[5] and was therefore entitled to an instruction on the shopkeeper's privilege. Both Liburdi and the sales associate testified they saw Guijosa and Delgado approach the bin without hats, and leave with hats. Then, Liburdi observed them exit the store without paying. The police found there was probable cause to charge based on this same information. A trial court is required to submit an instruction to the jury where there is substantial evidence to support the theory. *Savage v. State*, 127 Wn.2d 434, 448, 899 P.2d 1270 (1995) (citing *Cooper's Mobile Homes, Inc. v. Simmons*, 94 Wn.2d 321, 327, 617 P.2d 415 (1980)). Therefore, the trial court properly denied plaintiffs' motion for a directed verdict, and properly submitted to the jury the question of whether the shopkeeper's privilege statute applied.

III. JUDGMENT AS A MATTER OF LAW: CONSUMER PROTECTION ACT CLAIM

Plaintiffs last assign error to the trial court's grant of Wal-Mart's motion for judgment as a matter of law, setting aside the jury's verdict under the Washington Consumer Protection Act (CPA), chapter 19.86 RCW. The trial court granted Wal-Mart's motion, finding that there was no evidence to support a verdict against Wal-Mart for a CPA violation in the absence of a "per se" violation, which would have required a finding of discrimination.

When reviewing a motion for judgment as a matter of law (formerly judgment n.o.v.), this court applies the same standard of review as the trial court. *Hizey v. Carpenter*, 119 Wn.2d 251, 271, 830 P.2d 646 (1992). "A directed verdict or judgment n.o.v. is appropriate if, when viewing the material evidence most favorable to the nonmoving party, the court can say, as a matter of law, that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party." *Hizey*, 119

---

[5] Although the facts underlying Hernandez's detention are not as strong as the facts supporting detention of the other two, plaintiffs do not distinguish among themselves as to the reasonableness of their detentions.

Wn.2d at 271-72. Substantial evidence requires evidence that would convince an unprejudiced, thinking mind of the truth of a declared premise. *In re Guardianship of Way*, 79 Wn. App. 184, 191, 901 P.2d 349 (1995), *review denied*, 128 Wn.2d 1014 (1996) (quoting *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520, 7 A.L.R.5th 1014 (1990)). Although the court must draw all favorable inferences from the evidence in favor of the nonmoving party, we review the question of whether particular conduct gives rise to a CPA violation as a question of law. *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 30, 948 P.2d 816 (1997) (citing *Estate of Hall v. HAPO Fed. Credit Union*, 73 Wn. App. 359, 365, 869 P.2d 116, *review denied*, 124 Wn.2d 1026 (1994); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 560, 825 P.2d 714, *review denied*, 120 Wn.2d 1002 (1992); *Keyes v. Bollinger*, 31 Wn. App. 286, 289, 640 P.2d 1077 (1982)).

▪ Washington's Consumer Protection Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The purpose of the CPA is "to protect the public and foster fair and honest competition." RCW 19.86.920. To establish a claim under the CPA the plaintiff must prove five elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, and (5) causation. *Sing*, 134 Wn.2d at 30 (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986)).

▪ Neither party assigns error to Jury Instruction No. 23, which correctly provided that plaintiffs must prove these exact elements to find a violation of the CPA.[6] Jury Instruction No. 22 further provided the definition of an

---

[6] Jury Instruction No. 23 provided that each plaintiff had the burden of proving:

First, that the defendant engaged in unfair and deceptive act or practice; Second, that the act or practice occurred in the conduct of the defendant's trade or commerce; Third, that the act or practice affected the public interest; Fourth, that the plaintiff was injured in either his business or his property; and Fifth,

unfair and deceptive act or practice: "A violation of the law against discrimination in public accommodations is an unfair or deceptive act or practice in the conduct of the defendant's trade or commerce." Clerk's Papers at 208. Neither side objected to any of the jury instructions regarding the CPA. And, because no error was assigned these instructions, they became the law of the case. *Tilton v. Cowles Publ'g Co.*, 76 Wn.2d 707, 720, 459 P.2d 8 (1969), *cert. denied*, 399 U.S. 927 (1970). *See also State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

Wal-Mart argues that plaintiffs failed to establish the first element, an unfair or deceptive act or practice. We agree. Although plaintiffs argue that under Jury Instruction No. 24, the jury was free to find an unfair or deceptive act or practice by means other than discrimination, Jury Instruction No. 22 provided no definition of discrimination other than discrimination in public accommodation. We read the jury instructions as a whole, and assume that the jury used the definition in No. 22 in conjunction with No. 23. In harmonizing a verdict, the court does not read the special verdict in isolation, but as part of the whole verdict, including the jury instruction. *See e.g. Lord*, 117 Wn.2d at 877-80. If possible, jury verdicts must be read consistently. *Alvarez v. Keyes*, 76 Wn. App. 741, 743, 887 P.2d 496 (1995). Therefore, we hold that there was no violation of the CPA.

Alternatively, plaintiffs argue that the jury could have found unfair or deceptive practices through other evidence in this case. Specifically, plaintiffs argue that false statements made by Liburdi constituted "unfair and deceptive practices" affecting the public interest under the CPA. Plaintiffs cite Liburdi's failure to follow Wal-Mart's video surveillance policy, failure to log the price tag from Guijosa's hat into evidence, discrepancies between her testimony and that of the arresting officer, her explanation

---

that the defendant's act or practice was a proximate cause of plaintiffs injury. Clerk's Papers at 209.

for dirt found on the hats, and inconsistencies between her testimony and "apprehension narratives" as evidence upon which the jury could have found a violation of the CPA claim. It is true that discrimination is only one of several ways through which a plaintiff may prove a CPA violation. "To show a party has engaged in an unfair or deceptive act or practice a 'plaintiff need not show that the act in question was intended to deceive, but that the alleged act had the capacity to deceive a substantial portion of the public.'" *Sing*, 134 Wn.2d at 30 (quoting *Hangman Ridge*, 105 Wn.2d at 785 (emphasis omitted)). The purpose of the capacity-to-deceive test is to deter deceptive conduct before injury occurs. *Sing*, 134 Wn.2d at 30 (citing *Hangman Ridge*, 105 Wn.2d at 785). Consequently, a plaintiff alleging a CPA violation must show that the allegedly deceptive act sufficiently affected the public interest. *Sing*, 134 Wn.2d at 30. Where the transaction at issue was essentially a consumer transaction, the following factors are relevant to determine whether the act or practice affects the public interest:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Hangman Ridge*, 105 Wn.2d at 790. '

But, except for the instruction on discrimination in a public accommodation, the court did not give the jury any other instruction on how to determine if an act was "deceptive" or affected the "public interest." An examination of the record shows this was because the plaintiffs never alleged anything other than discrimination in their initial complaint or trial briefs to satisfy the public interest element. Additionally, when Wal-Mart moved for judgment as a matter of law at the end of plaintiffs' case, alleging there was no evidence to support the public interest element of

the CPA claim, plaintiffs responded that discrimination would establish that element. Plaintiffs did not discuss other possible deceptive practices affecting the public interest.

Furthermore, under the fifth *Hangman Ridge* factor, false imprisonment and malicious prosecution do not affect the public interest unless there is evidence that the acts had occurred before or were part of a generalized course of conduct. *Banks v. Nordstrom, Inc.*, 57 Wn. App. 251, 264, 787 P.2d 953, *review denied*, 115 Wn.2d 1008 (1990). Plaintiffs have not demonstrated how failure to keep video surveillance tape, appearance of the "mysterious price tag," or keeping the allegedly shoplifted hats affected a large number of consumers, or was likely to do so in the future. There was no evidence that these "acts" were part of a continuing course of conduct by Wal-Mart. Therefore, there was no basis upon which to find these allegedly deceptive acts affected the public interest. Additionally, even if malicious prosecution and false imprisonment could be "deceptive acts" under the CPA, the jury did not find for plaintiffs on these claims.

Therefore, under the law of the case, the only means by which the jury could find an "unfair and deceptive practice" was by discrimination in public accommodation. Thus, the finding of no discrimination necessarily means there was no CPA violation as a matter of law. Additionally, the evidence does not demonstrate that there were any other deceptive acts with the capacity to deceive a substantial portion of the public. *Sing*, 134 Wn.2d at 30. Specifically, in the absence of a "per se" act of discrimination, there was not substantial evidence to establish that Wal-Mart engaged in an unfair and deceptive act or practice affecting the public interest. Therefore, we hold that there was no deceptive act or practice in violation of the CPA.

When the jury's answers are consistent with each other, but not consistent with the general verdict, judgment may be entered in accordance with the answers, notwithstanding the general verdict. CR 49(b). "In the event the

special verdict is inconsistent, a court will harmonize the verdict to the extent possible." *Herring v. Department of Soc. & Health Servs.*, 81 Wn. App. 1, 16, 914 P.2d 67 (1996) (citing *State v. Peerson*, 62 Wn. App. 755, 765, 816 P.2d 43 (1991), *review denied*, 118 Wn.2d 1012, 824 P.2d 491 (1992)). The responses to special interrogatories prevail over the inconsistent implications of a general verdict. *Johnson v. Tradewell Stores, Inc.*, 24 Wn. App. 53, 600 P.2d 583 (1979), *aff'd*, 95 Wn.2d 739 (1981) (citing *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 261 P.2d 73, 266 P.2d 800 (1953); *Pepperall v. City Park Transit Co.*, 15 Wash. 176, 45 P. 743, 46 P. 407 (1896)).

> The reason is that answers to interrogatories are the jury's findings of fact and the judgment of the court must be a proper conclusion of law from these facts as found. A conflict between a finding of fact as stated in the answer to an interrogatory, and the general verdict, means that the jurors did not properly apply the law and the instructions as given by the trial court when they were rendering their general verdict.

14 Lewis H. Orland & Karl B. Tegland, Washington Practice: General Verdicts with Interrogatories, § 289(6) (1996). Here, the negative response to the special interrogatory on discrimination prevails over the inconsistent implication of the jury's verdict finding a CPA violation. *Johnson* is directly on point. We affirm the trial court's grant of Wal-Mart's motion for judgment as a matter of law on the CPA claim.[7]

Affirmed.

Hunt, A.C.J., and Houghton, J., concur.

Review granted at 142 Wn.2d 1016 (2001).

---

[7] Plaintiffs argue that Wal-Mart waived an objection to the inconsistent verdict because they did not ask for jury clarification, but instead moved for a judgment notwithstanding the verdict. Wal-Mart clearly raised the issue, and, as a j.n.o.v. is the correct remedy, we need not address any issue of waiver.