[No. 28676-2-III.    Division Three.    April 21, 2011.]

*In the Matter of the Trustee's Sale of the Real Property of Willard H. Brown et al.*

WELLS FARGO BANK, NA, *Respondent*, v. WILLARD H. BROWN ET AL., *Appellants.*

*Jan Gossing* (of *BTA Lawgroup PLLC*) and *N. Brian Hallaq*, for appellants.

*Mark B. Perry*, for respondent.

¶1 KORSMO, J. — The trial court found that Willard and Holly Brown had abandoned their house in Clarkston and could no longer claim the homestead exemption in subsequent foreclosure proceedings. Because the record supports that determination, we affirm.

## FACTS

¶2 The Browns were the sole shareholders of WW Cedar Company Inc. In August 2006, they obtained a $200,000 Small Business Administration commercial loan for WW Cedar from Wells Fargo Bank. Wells Fargo sought addi-

tional security for the loan in the forms of a personal guarantee by the Browns and a deed of trust secured by their Clarkston home. The residence was subject to a prior mortgage from Alaska USA Mortgage Company. The Wells Fargo deed of trust contained a provision by which the Browns waived their homestead exemption rights.

¶3 By 2008 the Browns and their company ran into financial difficulties. WW Cedar ceased operations and defaulted on its loan payments to Wells Fargo. In May or June, 2008, the Browns terminated their utility services and left the Clarkston house for Florida. There they entered into a one-year lease on an apartment and obtained Florida driver's licenses. The couple also registered their motor vehicles in Texas.

¶4 The Browns defaulted on their mortgage with Alaska USA in September 2008. A trustee for Alaska USA performed a nonjudicial foreclosure on the property in January 2009. The sale realized $116,377.85 more than was needed to cover the Alaska USA mortgage. That sum was deposited into the registry of the Asotin County Superior Court.

¶5 Wells Fargo and the Browns filed cross claims on the surplus. Wells Fargo asserted its deed of trust, while the Browns claimed the funds under their homestead exemption. The trial court initially directed the money be given to the Browns on the basis of the statutory homestead exemption. On reconsideration, the trial court ruled both that the Browns had abandoned their homestead and that the waiver of the homestead exemption was valid. It ordered the surplus funds disbursed to Wells Fargo.

¶6 The Browns timely appealed to this court. On the eve of oral argument, the parties stipulated to four other documents being added to the record of this appeal: (1) a Florida declaration of domicile filed by the Browns on May 10, 2008; (2) Florida's domicile statute, Fla. Stat. § 222.17; (3) a Walgreens' prescription dated May 20, 2008 that bore an Asotin post office box for Mr. Brown; and (4) a receipt dated May 20, 2008 for a charitable donation in Clarkston by Mrs. Brown that showed the Clarkston house address.

## ANALYSIS

¶7 The Browns present three issues related to the trial court's two rulings, but we need address only two of them: (1) whether the trial court correctly determined that the homestead had been abandoned and (2) whether Wells Fargo could claim the proceeds under the lien priority statute. We do not address, and express no opinion about, the Browns' argument that Washington's public policy precludes a homeowner from waiving the homestead exemption.

¶8 *Homestead Abandonment.* The Browns first argue that the trial court erred in concluding that they had abandoned their Clarkston home; instead, they were on an extended holiday in Florida. The evidence supports the trial court's view of the matter.

¶9 RCW 6.13.070 exempts homesteads from execution on judgments against the owner of the homestead in an amount up to $125,000. A "homestead" is the "real or personal property that the owner uses as a residence." RCW 6.13.010. An owner is presumed to have abandoned a homestead when the owner vacates the property for six months or longer. RCW 6.13.050. However, an owner may execute and file a declaration of nonabandonment with the county recording officer in the county where the property is situated. *Id.* Abandonment of a legal right is generally a question of fact. *See Moore v. Nw. Fabricators, Inc.*, 51 Wn.2d 26, 27, 314 P.2d 941 (1957). This court reviews findings of fact for supporting substantial evidence. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 712, 732 P.2d 974 (1987). Substantial evidence is evidence "sufficient to persuade a rational fair-minded person the premise is true." *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

¶10 In the present case, there is no real dispute that the Browns had vacated the property for over six months. There is also no dispute that they did not file a notice of

nonabandonment of their homestead rights. The trial court noted that a permanent shut-off of water to the property at the end of May indicated intent not to return. The Browns' acquisition of Florida driver's licenses and licensing vehicles in Texas was also persuasive evidence that the Browns had abandoned their homestead. They quit making payments on the Clarkston residence in favor of paying rent in Florida. The statement of Florida domicile, although not before the trial court, is further compelling evidence that the Browns had abandoned the Clarkston home. There was substantial evidence to support the trial court's finding.

¶11 The Browns also contend that they must affirmatively abandon the homestead. The argument is without merit in light of the plain language of RCW 6.13.050 that mere absence from the property for six months constitutes a presumption of abandonment.

¶12 The trial court's determination of abandonment is supported by substantial evidence in the record as well as the statutory presumption of abandonment. There was no error.

¶13 *Lien Priority and Proceeds.* The parties present conflicting constructions of RCW 61.24.100(6) concerning the priorities accorded homeowners and deeds of trust for commercial loans. The statute does not appear to have been the subject of a prior appellate opinion.

¶14 Deeds of trust secured by residential property are not subject to the homestead exemption. RCW 6.13.080(2); *In re Tr.'s Sale of Real Prop. of Upton*, 102 Wn. App. 220, 6 P.3d 1231 (2000). When a nonjudicial foreclosure sale results in a surplus, the proceeds are deposited with the superior court clerk. RCW 61.24.080(3). After appropriate notice, a claimant can seek the surplus by motion. "Interests in, or liens or claims of liens against the property eliminated by sale under this section shall attach to the surplus in the order of priority that it had attached to the property." *Id*.

¶15 The parties both argue that RCW 61.24.100(6) determines their respective priorities. It states:

A guarantor granting a deed of trust to secure its guaranty of a commercial loan shall be subject to a deficiency judgment following *a trustee's sale under that deed of trust* only to the extent stated in subsection (3)(a)(i) of this section. If the deed of trust encumbers the guarantor's principal residence, the guarantor shall be entitled to receive an amount up to the homestead exemption set forth in RCW 6.13.030, without regard to the effect of RCW 6.13.080(2), from the bid at the foreclosure or trustee's sale accepted by the sheriff or trustee prior to the application of the bid to the guarantor's obligation.

RCW 61.24.100(6) (emphasis added).

¶16 The Browns argue that the second sentence extends the homestead exemption to cases of commercial loans secured by the principal residence.[1] If Wells Fargo had sought to foreclose, its deed of trust would have been subject to the homestead exemption and, the Browns argue, Wells Fargo should not improve its position by failing to act.

¶17 Relying upon the emphasized language of the first sentence, Wells Fargo argues that entire paragraph is inapplicable to its deed of trust because it was not the instrument used for the nonjudicial foreclosure. For support, Wells Fargo relies upon *Beal Bank, SSB v. Sarich*, 161 Wn.2d 544, 167 P.3d 555 (2007). There the holder of a junior deed of trust for commercial loans sought to collect on the promissory notes while the senior lienholder foreclosed on its deed of trust. The debtors contended that the junior lienholder could not collect on the notes because the foreclosure had extinguished the debt (shown by the promissory notes) as well as deed of trust lien. *Id.* at 546-548. The court disagreed and stated that the "right of nonforeclosing junior lienholders and creditors is simply not implicated." *Id.* at 548. The court concluded:

---

[1] Although the term "principal residence" is not defined, it appears to be significantly the same as "homestead." A homestead is defined in part as the "dwelling house or the mobile home in which the owner resides or intends to reside." RCW 6.13.010(1). Similarly, the homestead abandonment statute permits a statement of nonabandonment as long as the owner has "no other principal residence." RCW 6.13.050.

> While the foreclosure eliminates the security of a junior lien-holder, the debts and obligations owed to that non-foreclosing junior lienholder are not affected by foreclosure under the statutes.

*Id.*

¶18 The court focused its analysis on RCW 61.24.100(1), which provides:

> "Except to the extent permitted in this section for deeds of trust securing commercial loans, a deficiency judgment shall not be obtained on the obligations secured by a deed of trust against any borrower, grantor, or guarantor after a trustee's sale under *that* deed of trust."

*Id.*

¶19 The court in *Beal Bank* focused on the emphasized word "that" in the statute as the basis for exempting the nonforeclosing junior lienholder from the consequences of the foreclosure action—loss of the opportunity to pursue a deficiency judgment. *Id.* In essence, because the junior lienholder had not chosen the foreclosure option, but instead had it forced upon it, the junior lienholder was not limited in its remedies by chapter 61.24 RCW.

¶20 Wells Fargo points to the fact that the same limiting language relied upon in *Beal Bank* is also present in the first sentence of RCW 61.24.100(6): "trustee's sale under *that* deed of trust." It then argues that the same limitation must carry over to the second sentence of subsection (6) so that the homestead allowance recognized there applies only against a foreclosing commercial lienholder. The effect of this reading is that the homestead allowance would be applicable only against the one commercial lender who seeks foreclosure, but not against any other commercial lender. Such limited exemption would be of little value to the homeowner other than to serve as a disincentive for a commercial lender to foreclose—something that would happen only when there was sufficient equity to pay off any senior lienholders as well as the debtor.

¶21 The Browns treat the two sentences of subsection (6) as two separate matters—one sentence deals with the

limited opportunity[2] for a deficiency judgment after fore-closing a commercial loan deed of trust and the second with priority for proceeds after a foreclosure. This effectively creates the following hierarchy for the proceeds from a foreclosure sale: (1) deed of trust securing a noncommercial loan (typically that used to purchase the residence), (2) homestead exemption, (3) deed of trust securing a commercial loan.

¶22 Both interpretations are plausible, and the scant legislative history materials we have seen do not shed any light on any legislative intent concerning the homestead exemption. We agree that the Legislature was addressing two separate issues related to the subject of commercial loans in this paragraph. The first sentence of subsection (6) references deficiency judgments, a remedy that is not available for commercial loans secured by a principal resi-dence because of RCW 61.24.100(3)(a)(ii). The second sen-tence directly addresses residences and the ability to assert a homestead exemption. Thus, the structure of the para-graph suggests that the Browns' interpretation is more plausible. Absent other legislative history, or ensuing legis-lative action, we believe that the Legislature provided homeowners the opportunity to assert the homestead ex-emption against a commercial loan when facing a non-judicial foreclosure.

¶23 Nonetheless, while their interpretation may carry the day, the trial court's well-supported finding of abandonment precludes relief for the Browns. A homeowner cannot assert a homestead interest in a property that is not their primary residence. The Browns had abandoned the Clarkston house long before the foreclosure proceeding

---

[2] RCW 61.24.100(3)(a)(i) permits deficiency judgments in commercial loan cases primarily for waste and wrongfully retained rents, but deficiency actions are not allowed when the property is the principal residence of the debtor, RCW 61.24.100(3)(a)(ii).

began. As it was no longer their home, it was not their homestead.

¶24 The judgment is affirmed.

KULIK, C.J., and BROWN, J., concur.