2018 DEC -3 AM 9: 34

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| FUJI FOOD PRODUCTS, INC., a California corporation, | ) ) ) |
| Respondent, | ) ) ) |
| v. | ) ) ) |
| OCCIDENTAL, LLC, a Washington limited liability company, | ) ) ) |
| Appellant. | ) ) ) |

No. 76152-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 3, 2018

ANDRUS, J. — Occidental LLC, a commercial landlord to Fuji Food Products Inc., appeals from an adverse jury verdict for conversion and an attorney fee award in Fuji's favor. Fuji cross appeals an adverse jury verdict on its claim for the return of a security deposit. We affirm the jury verdicts but reverse the award of attorney fees to Fuji and remand for rehearing on the attorney fee award under Marassi v. Lau, 71 Wn. App. 912, 859 P.2d 605, 606-07 (1993).

## FACTS

Fuji, a producer of prepackaged sushi, edamame, and salads, entered into a commercial lease with Occidental for 20,000 square feet of warehouse space in Seattle's SODO neighborhood (the Premises). The original lease ran for five

years, from December 1, 2008, to November 30, 2013. Fuji paid Occidental a security deposit of $42,000 when it took occupancy of the Premises.

Paragraph 56 of the lease specified that upon vacating the Premises, Fuji "shall remove all cooler rooms and HVAC systems on the roof." Fuji understood this provision to require the removal of three modular cooler rooms—one referred to as "the cooler," designed to keep food at 36 to 38 degrees, one identified as a "blast cooler," which had high velocity fans designed to quickly reduce temperature to meet FDA regulations, and one used as a freezer (collectively, "the cooler rooms"). Fuji purchased the cooler rooms, among other miscellaneous items, from the previous tenant, Monterey Gourmet Foods (Monterey), for $135,000. The leased space also included a temperature-controlled production area, but Fuji did not consider this space or any other areas of the Premises to fall within the definition of "cooler rooms." The modular cooler rooms were physically located in the southern portion of the Premises.

In early September 2013, Fuji asked Occidental's representative, Dr. Hokwai Woo, if Occidental would be interested in extending the lease on a month-to-month basis. Dr. Woo indicated that the lease permitted Fuji to remain as a month-to-month tenant but Fuji, as a holdover tenant, would have to pay rent of 175 percent of the base monthly rent. Dr. Woo also stated if Fuji chose to leave, it must "remove all equipment such as cooler, refrigerator, cooling system on the roof, heating system on the east loading dock, the Y-loading dock on the east, and plug all floor drains." On October 10, 2013, Fuji notified Occidental it would vacate the Premises by November 30 to avoid any holdover rent.

Throughout October 2013, Fuji and Occidental discussed the scope of Fuji's contractual obligations to remove cooler rooms from the facility. Fuji agreed it was contractually obligated to remove the three modular cooler rooms located in the southern portion of the Premises. Occidental contended Fuji had to remove structures in the middle and north end of the warehouse, actions Fuji did not believe it was required to undertake.

Before the parties resolved this issue, Occidental learned that another tenant, Vinum Wine Importing & Distribution was interested in taking over a portion of Fuji's space with the cooler rooms left in place. At Occidental's request, the parties extended the lease to December 13, 2013, while Occidental negotiated with Vinum. Fuji was willing to leave the cooler rooms in place for Vinum's use if Occidental would agree to release it from any responsibility for removing them from the Premises.

Occidental and Fuji signed an extension agreement on November 8, 2013, relieving Fuji of the obligation to pay any rent between November 30, 2013, the original lease expiration date, and December 13, 2013, the new lease expiration date, as long as Fuji vacated the premises by the latter date. The extension agreement provided that Fuji would refrain from removing the cooler rooms until November 21, 2013. It also directed Fuji to "begin removing the Cooler Rooms . . . from the Premises on the Removal Extension Date unless prior to that date Landlord expressly releases Fuji from its obligations to remove them and any other improvements."

- 3 -

Fuji, Occidental, and Vinum spoke by conference call on November 21, 2013. Fuji understood from this call that Occidental agreed to release it from the obligation to remove the cooler rooms. On December 6, 2013, Joseph Marchica, Fuji's Chief Executive Officer (CEO), sent Dr. Woo a draft release agreement to sign. Dr. Woo disputed the accuracy of the draft on December 9, 2013, sending a revised version of the release to Marchica on December 10, 2013. The following morning, Marchica made what he thought were minor changes to Dr. Woo's draft and asked to finalize the document that day. No release was ever executed.

Occidental and Vinum were unable to reach agreement on lease terms, and on the afternoon of December 11, 2013, Occidental notified Fuji that it had to remove the cooler rooms by December 13. On December 12, Fuji informed Occidental it was not possible to remove the cooler rooms on such short notice, and it would not pay holdover rent. It informed Dr. Woo that it would surrender the Premises on December 13, 2013, with the understanding that Occidental would provide Fuji with access to the building to remove the cooler rooms at a later date.

Fuji returned the keys to Dr. Woo on December 13, 2013. On December 17, 2013, Occidental sent Fuji a letter notifying it that it was in default of the lease because it had left the Premises without removing the cooler rooms, removing doors, and closing certain openings in partition walls. The letter provided "[t]his is your written notice to cure this default," referring to Section 16 of the lease.[1]

---

[1] Under Paragraph 16.1(c) of the lease, Occidental was required to give Fuji 30 days' notice of any default to allow Fuji time to cure the default. Fuji argued at trial that Occidental did not give Fuji 30 days to cure the alleged default.

Although Occidental's December 17, 2013, letter did not mention Vinum, the evidence at trial established that Occidental and Vinum had agreed on lease terms for Fuji's space with the modular cooler rooms in place the very same day. Dr. Woo sent a draft lease addendum to Vinum on December 17, but asked it to hold off on executing the lease until January 3, 2014.

Fuji replied on December 23, 2013, stating it had no obligation to remove the cooler rooms based on Occidental's representation that it had an agreement with Vinum to lease the Premises with the cooler rooms in place. Fuji also stated that if Occidental and Vinum did not have an agreement, it would remove the cooler rooms but needed Occidental to provide it access to do so. Fuji demanded the return of its security deposit. Occidental refused.

Fuji commenced this action in April 2014. It alleged five claims against Occidental: (1) breach of contract, (2) unjust enrichment, (3) conversion, (4) negligent misrepresentation, and (5) violations of the Consumer Protection Act (CPA). Occidental counterclaimed for breach of contract, claiming it had incurred monetary damages to pay utilities and to remove tenant improvements Fuji was obligated to remove. The trial court dismissed the CPA claim on summary judgment, and dismissed Fuji's negligent misrepresentation claim during pretrial motions.[2]

At the conclusion of Fuji's case-in-chief, Occidental sought judgment as a matter of law under CR 50 on Fuji's conversion claim, which the trial court denied.

---

[2] Fuji did not prosecute the unjust enrichment claim at trial and appears to have abandoned it.

Occidental renewed its motion post-trial, and the trial court again denied Occidental's motion.

On its counterclaim for breach of lease, Occidental claimed that Fuji had (1) failed to repair a frozen pipe, (2) failed to pay final utility charges and Fuji's share of common area maintenance for 2013; (3) failed to pay holdover rent for the period of time after Fuji surrendered the Premises and the date Occidental could make it useable for another tenant; (4) failed to repair and replace a door in the northern portion of its space, and (5) refused to reimburse Occidental $67,873 it paid to Allegiance Trucking to demolish structures in the north portion of Fuji's leased space that Occidental contended were "cooler rooms" within Paragraph 56 of the lease. It claimed damages of approximately $81,000, after the security deposit offset of $42,000.

During trial, the parties prepared a proposed Special Verdict Form for the jury to answer a series of questions regarding Fuji's breach of contract and conversion claims and Occidental's counterclaims. The jury found that Occidental breached its duty of good faith and fair dealing but did not otherwise breach the lease. It also found that Fuji had incurred no damages as the result of Occidental's breach. On the conversion claim, the jury found Occidental had converted Fuji's cooler rooms and awarded damages of $60,000.

On Occidental's counterclaim, the jury found Occidental had not fulfilled all conditions precedent to give rise to its contract counterclaim. It also found Fuji surrendered possession on December 13, 2013, and breached the lease by failing to fulfill certain conditions prior to surrendering the Premises, but it did not abandon

the cooler rooms when it left. The jury awarded Occidental $42,000 in damages, but it was instructed to reduce the award by Fuji's $42,000 security deposit. Its net award to Occidental was $0.

The trial court found Fuji to be the prevailing party and awarded $263,462 in attorney fees and costs of $22,507.

Occidental appeals, contending the trial court erred in denying its motion for a directed verdict or judgment as a matter of law on the conversion claim and in finding Fuji to be the prevailing party. Fuji cross appeals, claiming the trial court erred in accepting an inconsistent verdict that found Fuji had breached the lease after finding Occidental had not fulfilled the conditions precedent to bring the contract claim.[3]

## ANALYSIS

### A. Fuji's Conversion Claim

Occidental claims the trial court erred by denying its motions to dismiss Fuji's conversion claim before, during, and after trial. Occidental contends Fuji voluntarily abandoned its cooler rooms as a matter of law when its attorney sent the December 23, 2013, letter disclaiming any obligation to remove them from the Premises. Fuji, however, argued that Occidental converted the cooler rooms no later than December 17, 2013, by agreeing to a lease with Vinum that included the very same cooler rooms.

---

[3] Fuji also challenges the dismissal of its negligent misrepresentation claim. Because there was inadequate briefing on this issue, we decline to address the cross appeal relating to the negligent misrepresentation claim. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835, 842 (2011) (court will not consider inadequately briefed argument).

This court reviews de novo the denial of a motion for judgment as a matter of law. Davis v. Microsoft Corp., 149 Wn.2d 521, 530-31, 70 P.3d 126 (2003). The court accepts the truth of the non-moving party's evidence and draws all reasonable inferences in its favor. Id. A motion for judgment as a matter of law is granted only when the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the non-moving party. Id. at 531.

The tort of conversion involves willfully interfering with the property of another without lawful justification, resulting in the deprivation of the owner's right to possess his property. Wash. State Bank v. Medalia Healthcare LLC, 96 Wn. App. 547, 554, 984 P.2d 1041 (1999), review denied, 140 Wn.2d 1006 (2000). Abandonment of property is a complete defense to a conversion claim.[4] Lowe v. Rowe, 173 Wn. App. 253, 263, 294 P.3d 6 (2012), review denied, 177 Wn.2d 1018 (2013). Abandonment of a legal right is generally a question of fact, reviewed on appeal for supporting substantial evidence. In re Trustee's Sale of Real Prop. of Brown, 161 Wn. App. 412, 415, 250 P.3d 134 (2011). The party claiming abandonment must show that it was both intentional and voluntary. Ferris v. Blumhardt, 48 Wn.2d 395, 402, 293 P.2d 935 (1956). Abandonment must be proved by "clear, unequivocal and decisive evidence." Shew v. Coon Bay Loafers, Inc., 76 Wn.2d 40, 50, 455 P.2d 359 (1969). Whether a verdict should have been

---

[4] Fuji notes that Occidental did not plead abandonment as an affirmative defense in its answer and thus, waived the right to raise it at trial. When a party fails to plead an affirmative defense, it is generally waived. Henderson v. Tyrrell, 80 Wn. App. 592, 624, 910 P.2d 522 (1996). Occidental, however, raised this defense early in the case on summary judgment. The trial court rejected Fuji's waiver argument, ruling that it would instruct the jury on the affirmative defense of abandonment. Fuji has not assigned error on appeal to this ruling.

- 8 -

directed on a question of fact is itself a question of law. Postema v. Postema Enterprises, Inc., 118 Wn. App. 185, 192, 72 P.3d 1122 (2003).

Occidental was not entitled to judgment as a matter of law if, as Fuji argued at trial, Occidental converted the cooler rooms on December 17, 2013, by agreeing to lease Fuji's space and cooler rooms to Vinum. There is evidence in the record to support this contention. Michael De Maar, Vinum's president, testified that Vinum entered into a written lease for Fuji's space and three modular cooler rooms. De Maar was interested in the cooler rooms because Vinum was starting to sell beer, and it needed the ability to maintain the beer at 37 degrees. De Maar and Dr. Woo went back and forth on terms of a lease throughout November and early December 2013. According to De Maar, he and Woo reached a deal on all material terms on December 17, 2013. Although they did not execute the written lease amendment until January 3, 2014, the delay occurred only because of the intervening holidays. This evidence was sufficient for the jury to conclude that Occidental's conversion occurred before Fuji sent the December 23, 2013, letter.

Judgment as a matter of law was also inappropriate because the December 23 letter was equivocal as to Fuji's intent to abandon the cooler rooms. The letter provided:

> To be clear, Tenant's position is as follows:
>
> 1. Tenant has no obligation to remove the Cold Storage Facilities or the remaining Partitions based on the November 21 understanding and the fact that Landlord has reached an agreement with Vinum for the lease of the Premises with them in place.
>
> 2. Tenant is not obligated to remove any other improvements because it has (1) removed all its production and operating equipment, air compressors, tools for operation, shelving, and racking systems and

all office furnishings, computers and phones and (2) the rooms in the other areas of the Premises are not "cooler rooms."

3. In the unlikely event that Landlord and Vinum do not have an agreement in principle for the lease of the Premises with the Cold Storage Facilities and remaining Partitions intact, Tenant stands by its December 11 response to Landlord to remove the Cost Storage Facilities and the remaining Partitions provided Landlord grants Tenant access in which to do so and with the understanding that removal will require some lead time.

4. Subject to item no. 3 above, Tenant has complied with all its obligations under the Lease and demands a return of its security deposit, which per the Lease, is due within 15 days of the expiration, i.e., by December 28, 2013.

Marchica, Fuji's CEO, explained events leading up to this letter. He testified that Fuji did not plan to leave the cooler rooms in place if Occidental and Vinum had no deal. He stated that the company's intent was to transport them to Fuji's Los Angeles plant and to store them until Fuji decided whether it needed cold storage at another facility. Marchica knew it would take three weeks to remove the coolers. He asked for notice by November 21 if Vinum did not want the cooler rooms so it could arrange for their removal before the December 13 lease expiration. Vinum's De Maar testified that during the November 21 conference call, Occidental and Vinum told Marchica they wanted Fuji to leave the cooler rooms.

When Marchica received Woo's December 11, 2013, email demanding removal of the cooler rooms, he responded immediately that Fuji could not possibly remove the cooler rooms in two days. He testified he sent several e-mails and left voicemails for Dr. Woo asking for time to remove the cooler rooms. Marchica affirmed Fuji had no intent to abandon the coolers at that point.

Marchica further testified that on December 23, 2013, when Fuji's counsel sent the letter, he had no idea that Vinum had already agreed to lease the space with the cooler rooms in place. It was Marchica's understanding that Fuji had made several attempts to gain access to remove the cooler rooms but that Occidental had essentially locked it out. For this reason, Marchica testified, the letter also stated if Occidental had not reached agreement with Vinum and granted Fuji access, Fuji would reclaim its property.

There is substantial evidence negating Occidental's abandonment defense. Assuming the evidence in the light most favorable to Fuji, a reasonable jury could conclude either that Occidental's conversion occurred before Fuji sent the December 23, 2013, letter, or that Fuji did not intend this letter to be an expression of intent to voluntarily relinquish ownership of the cooler rooms. A jury could reasonably find the text of the letter to be equivocal evidence of Fuji's intent to abandon the cooler rooms.

Next, Occidental argues the trial court erred in denying its CR 50 motion to dismiss the conversion claim under the independent duty doctrine. The independent duty doctrine dictates when a party is limited to contract remedies even if an underlying tort is present:

> An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract. The court determines whether there is an independent tort duty of care . . . . When no independent tort duty exists, tort does not provide a remedy.

Eastwood v. Horse Harbor Foundation, Inc., 170 Wn.2d 380, 389, 241 P.3d 1256 (2010). We review de novo a trial court's determination whether a claim is barred

- 11 -

under the independent duty doctrine. <u>Key Development Inv., LLC v. Port of Tacoma</u>, 173 Wn. App. 1, 22, 292 P.3d 833 (2013).

The trial court concluded that the duty not to steal someone else's property is related to, but independent of, any duties in the parties' lease. We agree. First, Occidental argues that Fuji's claimed injury, the lost value of the cooler rooms and the forfeited security deposit, is the same injury it claimed to suffer as a result of the alleged breach of lease. The inquiry under <u>Eastwood</u>, however, is not what damages a party has sustained. It is a question of the source of the alleged duty. The fact that Fuji sought the same damages in tort and in contract is not the relevant inquiry.

Second, Occidental contends that Fuji's right to possess the cooler rooms after surrendering the Premises was governed by the lease. Occidental relies on Paragraph 11 of the lease for the proposition that Fuji contractually agreed that if it left property behind, the property reverted to Occidental, thus eliminating any independent tort duty it may have owed to Fuji. The lease language does not support this argument.

Paragraph 11.5(c) provided that, subject to the provisions of Paragraph 56, any "alterations, improvements or additions" made to the Premises became the landlord's property. Under this section, machinery, equipment, and trade fixtures remained the property of the tenant, unless removal would cause material damage to the Premises.[5] Paragraph 56 of the lease required Fuji to remove the cooler rooms and HVAC systems at the end of the tenancy:

---

[5] Paragraph 11.5, entitled "Alterations and Additions," provided:

- 12 -

**56. EXISTING TENANTS IMPROVEMENTS.** Tenant shall remove all Cooler Rooms and HVAC systems on the roof. Other improvements will remain at termination of Lease with the exception of all production and operating equipment, air compressors, tools for operation, shelving and racking systems and all office furnishings, computers and phones. Wiring shall be left in place with computer and phone jacks.

Reading Paragraphs 11.5(c) and Paragraph 56 together, the parties' intent was clear—the modular cooler rooms were not considered an "improvement" that became property of Occidental at the end of the lease.

Even if it were arguable, Marchica testified that the cooler rooms were "modular, meaning that they could be taken down and put up. They were transportable." Although the coolers would have cost over $60,000 to remove and transport to California, there is nothing to indicate that their removal would have caused material damage to the Premises. Thus, the lease did not transfer ownership of the cooler rooms to Occidental at the end of the tenancy.

Because the parties did not agree contractually that ownership of the cooler rooms would transfer to Occidental, the duty not to convert Fuji's property arose outside of the four corners of their agreement. Because Occidental owed a tort duty not to convert Fuji's cooler rooms independent of the lease, the conversion claim was not barred by the independent duty doctrine.

---

(c) Subject to the provisions of Paragraph 56, unless Landlord requires their removal, as set forth in paragraph 11.5(a), all alterations, improvements or additions which may be made on the Premises, shall become the property of Landlord and remain upon and be surrendered with Premises at the expiration of the term. Notwithstanding the provisions of this paragraph 11.5(c), Tenant's machinery, equipment and other trade fixtures, other than that which is affixed to the Premises so that it cannot be removed without material damage to the Premises, shall remain the property of Tenant and may be removed by Tenant subject to the provision of Paragraph 11.3.

The trial court did not err in denying Occidental's CR 50 motions to dismiss Fuji's conversion claim.

B. Occidental's Breach of Lease Counterclaim

On its cross appeal, Fuji challenges the jury's finding that it breached the lease. It argues this finding conflicts with the finding that Occidental failed to fulfill all conditions precedent triggering Fuji's obligation to perform.[6]

As a preliminary matter, Occidental contends Fuji cannot raise this issue on appeal under RAP 2.5 because it did not bring the alleged inconsistency to the attention of the trial judge in a timely manner. App. Reply at 19. CR 49(b) provides that:

> When the answers [to the jury interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

In Gjerde v. Fritzsche, 55 Wn. App. 387, 393, 777 P.2d 1072 (1989), the court held that under CR 49(b), a party's failure to object to inconsistencies in a special verdict prior to the jury's discharge constitutes a waiver of any objection on appeal. This court declined to review the issue on appeal because counsel, despite recognizing the inconsistency, remained silent in an attempt to "try his luck with a second jury." Id. at 394.

In Malarkey Asphalt Co. v. Wyborney, 62 Wn. App. 495, 511, 814 P.2d 1219 (1991), however, the court considered a challenge to a special verdict form despite

---

[6] Fuji designates this assignment of error as "conditional," because it argues the court need only address the issue if it deems Occidental a prevailing party for purposes of a fee award. Because the viability of Occidental's counterclaim is relevant to our analysis of Occidental's prevailing party argument, we discuss this issue first.

the appellant's failure to bring the error to the trial court's attention before it dismissed the jury. This court found no waiver because, unlike in Gjerde, there was no indication the appellant kept the issue from the trial court for strategic reasons. Id. In Mears v. Bethel Sch. Dist. No. 403, 182 Wn. App. 919, 929, 332 P.3d 1077 (2014), the court acknowledged the differing approaches taken in Gjerde and Malarkey. It chose not "to resolve these divergent approaches to the waiver question" in order to "provide guidance to trial courts faced with inconsistent verdict claims." Id.

The record here does not show that Fuji's counsel recognized problems with the special verdict but chose to remain silent in the hope of getting back in front of a different jury. In Fuji's post-trial motion for attorney fees, it asked the trial court to dismiss Occidental's counterclaim based on inconsistent findings by the jury. Fuji did not suggest it was entitled to a new trial in front of a different jury. Instead, it argued that, as a matter of law, it was entitled to judgment against Occidental because the jury found Occidental failed to fulfill conditions precedent to prosecuting its claim. Id. Because this case is distinguishable from Gjerde, we conclude Fuji preserved the issue for appeal.

The special verdict form contained 13 questions, organized by party and claim. The questions and jury answers relating to Occidental's counterclaim were:

1. Was there a mutual understanding between Occidental and Fuji that the term "cooler rooms" as contained in the Lease included the structures in the North portion of the Premises?

     ____ Yes          __X__ No

2. Did Fuji have an obligation to remove the structures in the North portion of the Premises?

     __X__ Yes           _____ No

3. Did Occidental fulfill all of its contractual obligations and conditions precedent to give rise to the counterclaims asserted?
      _____ Yes           __X__ No

4. Did Fuji Foods surrender possession of the premises on December 13, 2013?
      __X__ Yes           _____ No

5. Did Fuji Foods abandon all Cooler Rooms?
      _____ Yes           __X__ No

6. Did the lease require Fuji Foods to fulfill certain conditions prior to surrendering possession of the premises?
      __X__ Yes           _____ No
If you answered "Yes," move on to the next question. If you answered "No," then you may sign this Verdict Form.

7. Did Fuji Foods breach the lease by failing to fulfill any of the conditions prior to surrendering possession of the premises?
      __X__ Yes           _____ No

If you answered "Yes" to this question, what is the total amount Occidental was actually damaged as a result of Fuji's breach of contract?
$___42,000___. Reduce this amount by the $42,000 security deposit paid by Fuji: $___0___

Fuji contends that the jury's answer to Question 3, that Occidental failed to fulfill all of its contractual obligations or conditions precedent, is inconsistent with its answer to Question 7, that Fuji breached the lease. It argues that Fuji cannot be liable for breach of contract if Occidental failed to prove that all conditions precedent to Fuji's performance had been fulfilled.

In evaluating a claim of inconsistent findings on a special verdict form, the court must—if possible—reconcile the jury's answers and not substitute its judgment for the jury's. Mears, 182 Wn. App. at 927; Estate of Stalkup v. Vancouver Clinic, Inc., PS, 145 Wn. App. 572, 586, 187 P.3d 291 (2008). If the

answers on the verdict form reveal a clear contradiction such that the court cannot determine how the jury resolved an ultimate issue, it should reverse the judgment. State Dept. of Highways v. Evans Engine & Equip. Co., 22 Wn. App. 202, 204, 589 P.2d 290 (1978), review denied, 92 Wn.2d 1010 (1979).

Fuji relies on Evans to argue that we should strike the jury's answer to Question 7 as surplusage. In that case, the jury found the defendant liable for the plaintiff's injuries, and the court held that this response was tantamount to a general verdict. It concluded that the subsequent questions asking whether the defendant's employee had been loaned to another defendant were "surplusage." 22 Wn. App. at 209. We do not find any of the jury's answers here to be tantamount to a general verdict. Nor do we believe it is appropriate to ignore any of the answers to the special interrogatories. "It is the rule in this state that answers to special interrogatories should, if possible, be read harmoniously to support a judgment." Evans, 22 Wn. App. at 204. In harmonizing a verdict, we do not read the special verdict in isolation but as part of the whole verdict, including the jury instructions. Guijosa v. Wal-Mart Stores, Inc., 101 Wn. App. 777, 797, 6 P.3d 583 (2000), aff'd, 144 Wn.2d 907, 32 P.3d 250 (2001).

Jury Instruction 3 provided that Occidental had the burden of proving the following propositions to prevail on its breach of contract claim: (1) Occidental entered into a lease with Fuji allowing Occidental to enter the Premises after 10 days' prior written notice to put the Premises in good order, condition and repair and to charge Fuji for any costs it incurs in making such repairs; (2) Occidental provided Fuji with 10 days' written notice that it had hired Allegiance Trucking to

demolish the interior of the *south* portion of the Premises; (3) Fuji was required under the lease to perform the work that Occidental hired Allegiance Trucking to perform; (4) Fuji was given the opportunity and access to perform the specific work on the Premises after proper notice and refused to do so; and (5) Occidental was damaged as a result of paying Allegiance Trucking to perform the work that it alleges was Fuji's responsibility.

The evidence indicated that in January 2014, Dr. Woo hired Allegiance to demolish the interior of the Premises and return it to an "open warehouse spaces." Ruben Garner, Allegiance's owner, testified that he charged Occidental approximately $77,000, to remove refrigeration rooms in the north portion of the Premises, to strip down the walls, to haul hazardous material from the north portion of the Premises, to remove cooling fans, to replace structural beams on the north portion of the Premises, and to patch the roof.

Although Dr. Woo obtained a bid from Allegiance to remove the coolers in the south portion of the Premises, Garner testified that he only did work on the north portion of the Premises. Dr. Woo corroborated this evidence; he testified he paid Allegiance only for work in the north end of the Premises. Dr. Woo explicitly directed Allegiance not to remove the refrigeration rooms in the south portion of the Premises. A reasonable jury could conclude from this evidence that Occidental failed to establish the second element of Occidental's breach of contract claim.

Furthermore, the fourth element of Instruction 3 required Occidental to prove that Fuji was given access to remove the cooler rooms in the south portion of the Premises. Marchica testified that before turning over the keys to Occidental,

- 18 -

Fuji asked Occidental for access to the building on December 16, 2013, to which Fuji received no reply. Dr. Woo testified that he did not respond to Marchica's request for access. Instead, Dr. Woo testified Fuji did not need access, as Fuji should have simply kept the keys rather than turning them in on December 13, 2013. Dr. Woo also testified that at that point, he handed the situation over to his attorneys without responding to Marchica's request for access, and claimed that Fuji never contacted his attorneys to request access again. Contrary to this testimony, the December 23, 2013, letter included a request for access.

Based on this record, a jury could have found insufficient evidence to establish the fourth element of Instruction 3. The lack of evidence would explain why the jury found Occidental had not fulfilled all of its contractual obligations or conditions precedent in Question 6 of the Special Verdict Form.

The jury, however, awarded Occidental the security deposit of $42,000. This award is explained by Instruction 15, which set out the doctrine of anticipatory breach:

> A party who is ready, willing, and able to perform is excused from the duty to perform when the other party repudiates the contract by word or act that definitely indicates it cannot or will not perform its obligations under the contract.
>
> In this case, if plaintiff Fuji Foods proves by a preponderance of the evidence that defendant Occidental repudiated the contract, then Fuji Foods was excused from the duty to remove the Cooler Rooms.
>
> Alternatively, *if defendant Occidental proves by a preponderance of the evidence that Fuji Foods repudiated the contract, then Occidental was excused from the duty to return Fuji Foods' security deposit.*

(emphasis added). In essence, the jury was instructed that if it found Fuji had repudiated the lease, Occidental could retain the security deposit.

There is substantial evidence to support a finding that Fuji repudiated the lease agreement. Occidental presented evidence that Fuji failed to fix a frozen pipe before surrendering the Premises, and that Occidental had to hire a locksmith to drill a lock to get into an area Fuji leased to fix this pipe. Kenny Sung, Fuji's former president, acknowledged that under Paragraph 11.2 of the lease, fixing plumbing problems was its responsibility.

Occidental also presented evidence that Fuji failed to pay the last electricity and water bills, or its share of the 2013 common area maintenance charges. These utilities were Fuji's responsibility under Paragraph 7 of the lease. There was also evidence that Occidental incurred costs to rebuild a partition wall that Fuji was required to construct or pay to have rebuilt. Paragraph 57 of the lease provided that at the termination of the lease, the tenant was to pay to close any openings installed in partitions at the landlord's request. Occidental made the explicit request that the openings be closed in its December 17, 2013 default letter.

The jury could have determined that Fuji repudiated the lease by failing to fulfill these lease obligations and, by doing so, forfeited its right to the security deposit. Such a finding would explain why the jury awarded Occidental $42,000, the exact amount of the security deposit, rather than the $81,000 in damages it sought at trial. In other words, despite a lack of evidence to find for Occidental on its breach of contract counterclaim in Instruction 3, it could have nevertheless found, based on Instruction 15, Fuji repudiated the agreement by failing to pay for

items it was responsible for under the lease. The jury verdict can be harmonized in this way. There is no basis for setting aside any of the jury's findings.

C. Prevailing Party

The final issue is whether the trial court erred in awarding attorney fees to Fuji and denying Occidental's motion for fees. Fuji and Occidental both sought an award of attorney fees and costs under Paragraph 35 of the lease, which provided:

> **35. ATTORNEY'S FEES.** In the event either party requires the services of any attorney in connection with enforcing the terms of this Lease or in the event suit is brought for the recovery of any rent due under this Lease or for the breach of any covenant or condition of this Lease for the restitution of said Premises to Landlord and/or eviction of Tenant during said term or after expiration thereof, the prevailing party will be entitled to a reasonable sum for attorney's fees and court costs.

The trial court found Fuji to be the prevailing party, and awarded it $263,462.00 in attorney fees and $22,506.97 in costs. It concluded that "all of the fees and costs awarded to Fuji were incurred related to claims arising out of the Lease between the parties and are, therefore, recoverable – regardless of whether one or more of those claims were also founded upon tort theories."

Whether a party is a "prevailing party" is a mixed question of law and fact that the court reviews under an error of law standard. Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 706, 9 P.3d 898 (2000). Occidental first argues that Fuji cannot be the prevailing party because Fuji failed to prove its contract claim whereas Occidental established Fuji breached the lease.

This argument ignores the finding that Occidental breached its duty of good faith and fair dealing. There is an implied duty of good faith and fair dealing in every contract. Badgett v. Security State Bank, 116 Wn.2d 563, 569, 807 P.2d

- 21 -

356 (1991). Fuji argued that Occidental breached this implied term by negotiating a deal to lease Fuji's modular cooler rooms to Vinum while simultaneously claiming Fuji had breached its duty to remove the same cooler rooms from the Premises, refusing it access to recover its property, and hiding the fact of the Vinum lease from Fuji. The good faith and fair dealing claim arose out of the lease. Although the jury did not award Fuji monetary damages for Occidental's breach, the jury nonetheless found a breach had occurred.

Fuji also relies on the fact that it received a net affirmative monetary judgment to support the conclusion that it is the sole prevailing party here. RCW 4.84.330 provides that:

> In any action on a contract or lease . . . where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

Under this statute, the prevailing party is usually "one who receives an affirmative judgment in its favor." Marassi v. Lau, 71 Wn. App. 912, 915, 859 P.2d 605, 606-07 (1993). But Marassi recognized that when a case involves several distinct and severable contract claims, the "net affirmative judgment" rule may not be a fair or just result. Id. at 607.[7] The fact that Fuji's damage award exceeded Occidental's by $18,000, and thus, received the net affirmative judgment, is not dispositive.

---

[7] At oral argument, Fuji argued that under Douglass v. Shamrock Paving, Inc., 189 Wn.2d 733, 406 P.3d 1155 (2017), the party who receives a net affirmative judgment in its favor must be found to be the prevailing party. Douglass, however, addressed the issue of whether a landowner who incurred remedial action costs under the Model Toxics Control Act was the prevailing party for purposes of an award of attorney fees under RCW 70.105D.080. The court did not address how a trial court should evaluate competing requests for attorney fees when both prevail on claims.

Occidental contends that although Fuji received a net affirmative judgment, it did so only because Fuji prevailed on a tort claim for which a fee award is impermissible. The trial court concluded that Fuji was entitled to recover attorney fees because the fees "related to claims arising out of the Lease." The Washington Supreme Court has held that [u]nder Washington law, for purposes of a contractual attorneys' fee provision, an action is on a contract if the action arose out of the contract and if the contract is central to the dispute." Seattle-First Nat'l Bank v. Wash. Ins. Guar. Ass'n, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991). There, it awarded attorney fees to the prevailing party, even though the cause of action was not breach of contract. Thus, whether the claim asserted is based in contract or tort is also not dispositive.

The trial court relied on Edmonds v. John L. Scott Real Estate, Inc., 87 Wn. App. 834, 942 P.2d 1072 (1997), Hill v. Cox, 110 Wn. App. 394, 41 P.3d 495 (2002), and Deep Water Brewing LLC v. Fairway Resources, Ltd, 152 Wn. App. 229, 215 P.3d 990 (2009), cases in which this court affirmed awards of attorney fees based on a fee provision in a contract even though the claim on which the party prevailed was a tort claim.

In Edmonds, a buyer signed a broker agreement with a John L. Scott agent. This agent showed her a house listed by a second Scott agent. 87 Wn. App. at 840. The buyer agreed to purchase this home on the assurance that a drainage problem in the basement would be fixed and warranted. Id. at 841. As closing approached, the basement remained wet. The buyer demanded the return of her earnest money. Id. at 842. John L. Scott's counsel determined that the drainage

problem had been fixed and the buyer was in default. Id. The broker disbursed half of the earnest money to the sellers and half to the agents involved. Id. at 843.

The buyer sued John L. Scott for breach of contract, CPA violations, breach of fiduciary duty, conversion, negligence, and fraud. Id. at 843. The trial court found for the buyer on all claims and awarded the buyer attorney fees. Id.. On appeal, the broker claimed the buyer was not entitled to an award of attorney fees for the time spent on the tort and CPA claims. The court disagreed, concluding that the buyer's tort and statutory claims were based on the agent's drafting of the earnest money agreement. Id. at 855-56. Furthermore, the breach of fiduciary duty claim was based on the broker's disbursement of the buyer's earnest money in a manner the broker claimed was mandated by the earnest money agreement. Id. at 855-56. In other words, its defense to the buyer's tort claims rested on language of the agreement. For this reason, it concluded the terms of the earnest money agreement and the contractual relationship created by the agreement were central to buyer's claims. Id. at 855-56.

In Hill v. Cox, a landowner sued the seller claiming timber trespass. 110 Wn. App. at 400. In the real estate contract, the seller had reserved certain logging rights but held no rights to log within 100 feet of the cabin sold to the landowner. Id. at 399-400. The seller then hired loggers to cut 12 trees within the proscribed area. Id. at 400. After the landowner sued, the trial court granted the landowner's motion for summary judgment on liability. Id. at 400-01. The jury awarded the landowner $47,000. Id. at 401.

On appeal, the landowner sought attorney fees under the terms of the real estate contract. Id. at 411. The court acknowledged the landowner chose to pursue a statutory tort claim, rather than to enforce the contract. Id. But it concluded there would have been no trespass to timber if the parties had not agreed that trees within 100 feet of the cabin were not to be cut. Id. at 412. Thus, the timber trespass arose out of the contract, and the contract was central to the dispute. It therefore concluded the landowner was the prevailing party. Id.

Finally, in Deep Water Brewing, a restaurant owner sued a development company for breach of a right-of-way agreement for failing to protect its view easement of Lake Chelan. 152 Wn. App. at 238. It also sued the president and sole member of the development company for tortious interference with the right-of-way agreement. Id. at 242. The court affirmed an award of attorney fees against the president even though he was not a party to the right-of-way agreement. Id. at 279. The court concluded that "[e]nforcement of the agreements and the claims that followed their breach is the essence of the [plaintiffs'] tortious interference with contract claim." Id. at 279. The court affirmed the fee award against both the developer and its president. Id.

We contrast these three cases with Boyd v. Sunflower Properties LLC, 197 Wn. App. 137, 389 P.3d 626 (2016). In that case, a buyer of undeveloped lots sued the seller seeking to confirm the existence of an implied easement on a gravel road that crossed the seller's remaining property. Id. at 141-42. The trial court granted Sunflower's motion for summary judgment but denied its request for fees, concluding that the buyer's claim arose in equity, not out of the purchase and sale

agreement. Id. at 142. This court agreed. It noted that "[i]f a party alleges a breach of a duty imposed by an external source, such as a statute or the common law, the party does not bring an action on the contract, even if the duty would not exist in the absence of a contractual relationship." Id. at 150 (quoting Boguch v. Landover Corp., 153 Wn. App. 595, 615, 224 P.3d 795 (2009)). It concluded that, while the agreement was factually relevant, it was not central to the dispute because the implied easement claim would have existed whether a contract existed or not. Id. at 151.

This case is more akin to Edmonds than Sunflower. As in Edmonds, the only way Fuji could establish conversion was to defeat Occidental's contention that its possession of the cooler rooms was justified by language in the lease. Occidental used the lease as a shield to liability for conversion. In this sense, its defense to the tort claim arose out of the contract and the lease's terms were central to the conversion dispute because Occidental made it so.

Occidental contends that, under the doctrine of judicial estoppel, Fuji cannot argue that its conversion claim "arose out of the lease" because it argued below that the tort duty Occidental owed was independent of the contract. The equitable doctrine of judicial estoppel precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. Harris v Fortin, 183 Wn. App. 522, 526, 333 P.3d 556 (2014). When facts are not in dispute, we review a trial court's decision regarding the application of judicial estoppel for an abuse of discretion. Id.

We find no abuse of discretion here. Whether a party may pursue a remedy in tort under the independent duty doctrine is not the same analytical question as whether a defendant's defense to a tort claim is based on language in the parties' agreement and whether the agreement is central to the dispute.

Occidental contends that even if Fuji prevailed in part, it should be deemed the "substantially prevailing party" because not only did it prove Fuji breached the lease and was awarded $42,000, but it also successfully defended many of Fuji's claims, including the claim for the return of its security deposit. But the cases on which Occidental relies do not support this approach. In Marine Enterprises, Inc. v. Security Pacific Trading Corp., the contract at issue expressly provided that if neither party wholly prevailed, then the party that substantially prevailed would be entitled to fees. 50 Wn. App. 768, 771, 750 P.2d 1290 (1988). No similar language exists in the Occidental/Fuji lease.

In Transpac Dev., Inc. v. Oh, 132 Wn. App. 212, 217, 130 P.3d 892 (2006), the other case on which Occidental relies, the court did not award fees based on whether one party substantially prevailed. Instead, it applied the proportional approach of Marassi v. Lau, 71 Wn. App. 912, 915, 859 P.2d 605 (1993), abrogated on other grounds by Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 200 P.3d 683 (2009). Transpac does not support Occidental's "substantially prevailing party" approach.

Occidental's final argument is that, at a minimum, it is entitled to a proportional award of fees under Marassi and Transpac. We agree. "A proportionality approach awards the plaintiff attorney fees for the claims it prevails

upon, and likewise awards fees to the defendant for the claims it has prevailed upon. The fee awards are then offset." Id. at 917. In Marassi, the plaintiffs contracted with a developer to make improvements to property. When the defendant did not fulfill the contract, the plaintiff sued for breach of contract, negligence, fraudulent conveyance, and misrepresentation, all of which arose from the same contract. Id. at 913. Although the plaintiff prevailed on only 2 of 12 claims, this court awarded fees under the proportionality approach, reasoning that proportionality is appropriate "when the alleged contract breaches at issue consist of several distinct and severable claims." Marassi, 71 Wn. App. at 917.

In Transpac, a landlord-tenant case, the landlord and tenant each sued each other for breach of lease. 132 Wn. App at 213. Both sides sought attorney fees under a bilateral attorney fee provision. Id. at 215. At trial, the court found that the tenant had breached the lease by subletting it without the landlord's approval and by failing to evict the subtenant. Id. at 215-16. It also found that while the tenant breached the lease, the landlord was not entitled to damages because it voluntarily terminated the lease and then failed to mitigate damages. Id. at 216. The trial court did not award fees to either party because it found that neither party prevailed. Id. at 216.

This court reversed, holding that because the lease provided the prevailing party was entitled to attorney fees, an award was mandatory under RCW 4.84.330. Id. at 220-21. It concluded the Marassi proportionality approach was the most appropriate given that both parties prevailed. Id. at 219-20 ("Following Marassi and International Raceway, Inc., we conclude that when distinct and severable

claims are involved, an order that leaves both parties to bear their own costs is not adequately supported by a bare conclusion that each party recovered on a substantial theory.")

Fuji contends the proportionality approach is inappropriate because the parties' claims were neither distinct nor severable. Fuji relies on the jury's findings to argue that the claims cannot be severed because they all arose from the dispute over the removal of the cooler rooms. But the jury's findings are not all related to the cooler room dispute. As detailed in Instruction 19, Occidental asserted Fuji breached the agreement in multiple ways and sought damages arising out of, among other things, Fuji's failure to remove tenant improvements in the north portion of the premises, failure to pay utility bills and to pay for a frozen pipe, and the failure to pay the costs to repair roll up doors. Occidental's breach of contract claims were distinct and severable from Fuji's claims.

This case is analogous to Transpac. Both parties alleged breach of the lease. Both parties proved at least one breach occurred. Fuji was awarded $60,000 for Occidental's conversion of the modular cooler rooms and Occidental was awarded $42,000, the amount of the forfeited security deposit. Fuji defeated Occidental's request for $81,000 in holdover rent and damages but lost its claim for a return of the security deposit. Fuji claimed damages in excess of $200,000, the value Fuji placed on the coolers, and Occidental prevailed in reducing the awarded damages to $60,000, but Occidental lost its affirmative defense of abandonment.

Because the lease agreement entitled the prevailing party to an award of fees, and both parties prevailed at trial, both Fuji and Occidental are entitled to an award of attorney fees and costs under the Marassi proportional approach. We reverse the award of attorney fees and costs to Fuji and remand the matter to the trial court for rehearing on the issue of attorney fees and costs under Marassi.

Occidental, as prevailing party in this court, is entitled to an award of attorney fees in this appeal, subject to compliance with RAP 18.1.

Andrus, J.

WE CONCUR:

Leach, J.

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON